Georgia WHITE, Plaintiff-Appellant,

v.

ROBERTSON–DRAGO FUNERAL
HOME, INC.,
Defendant-Respondent,

and

Walter L. Friedhofen, Defendant.

Georgia WHITE, Plaintiff-Respondent,

v.

ROBERTSON–DRAGO FUNERAL
HOME, INC.,
Defendant-Appellant,

and

Walter L. Friedhofen, Defendant.

Nos. 9785 and 9786.

Missouri Court of Appeals,
Springfield District.

May 2, 1977.

Motion for Rehearing or to Transfer
Denied May 20, 1977.

Application to Transfer Denied
July 11, 1977.

Henry, Henry & Henry, West Plains, for
plaintiff/appellant-respondent, Georgia
White.

Russell G. Clark, David W. Ansley, Wool-
sey, Fisher, Clark, Whiteaker & Stenger,
Springfield, for defendant/respondent-ap-
pellant, Robertson-Drago Funeral Home,
Inc.

Before STONE, P. J., and TITUS and
FLANIGAN, JJ.

STONE, Presiding Judge.

On the morning of March 8, 1971, Frank
Hall, then 52 years of age, an employee of
Robertson-Drago Funeral Home, Inc., of
West Plains, Missouri, undertook to make
an ambulance run from West Plains to
Springfield for the purpose of transferring
Linda White from West Plains Memorial
Hospital to the Cox Medical Center in
Springfield. Georgia White, plaintiff in the
present action, also was a passenger in the
Cadillac combination hearse-ambulance, her
interest and function being that of caring

for Linda White, her daughter-in-law, during the transfer. After a trip punctuated by two disturbing episodes of breathing complications on Linda's part, the ambulance proceeded north into and through Springfield on Glenstone Avenue. Hall testified that the ambulance's siren was "on" continuously from Battlefield Road near the south edge of the city to the point of accident, and that the "noon hour traffic" was "very heavy." There were no adverse weather or light conditions.

As Hall approached the signalized intersection of Glenstone Avenue and Chestnut Trafficway after coming off a viaduct a short distance south of that intersection, he was following the flow of traffic at perhaps 20 to 25 miles per hour (so he said); but, because a number of vehicles had stopped in the two northbound lanes ahead of him in obedience to the then red "stop" light for Glenstone traffic, Hall pulled to his far right, and thus to the east, to proceed around those stationary vehicles and through the intersection although the light still was red.[1] In pursuing this course, the ambulance traveled five or six feet east of the vehicles halted behind a white "stop line" across Glenstone near the south edge of the intersection. Hall insisted that, as he neared the "stop line," he was looking to his left or to the west; and that, as soon as he had moved forward far enough to sight an automobile (subsequently identified as a 1969 Buick Skylark driven by defendant Friedhofen) eastbound on Chestnut, he went into a "hard brake" and skidded to the point of collision where the front end of the northbound ambulance struck the fore portion of the right side of the eastbound Friedhofen Buick. As a result of that collision, the front end of the eastbound Buick was turned around and came to rest headed in a general northwesterly direction, and the northbound ambulance (the heavier vehicle) continued forward to the northeast corner of the intersection where it struck and broke the signal standard. Georgia White, who had been sitting on a collapsible seat "in the back," was thrown about inside the ambulance and sustained injuries to her person.

Defendant Walter Friedhofen, the operator of the Buick Skylark, was in the process of proceeding east on Chestnut Trafficway straight through this intersection. Friedhofen had two passengers with him, one of whom was in the right front seat at the time. Those two, in an admitted state of intoxication developed in a downtown bar, were being delivered to their homes. Friedhofen, then 71 years of age, who offered the frequently-tendered concession that he had consumed a single beer at the same bar shortly before his assumption of the Good Samaritan role, had the green light at this intersection and testified he never saw the ambulance or its red light and never heard its siren. The evidence showed that, although there was a field on the southwest corner of Glenstone and Chestnut, vision across that area for northbound drivers on Glenstone and eastbound drivers on Chestnut was, from time to time and at certain points, materially obstructed by large billboard advertising signs and also, at the time of the accident under consideration, by northbound traffic on Glenstone approaching the signalized intersection and by several stationary vehicles waiting for the signal light to change.

At the conclusion of a two-day vigorously contested trial on April 11, 1974, the jury returned a unanimous verdict (a) finding the issues for plaintiff and against defendant Robertson-Drago and assessing plaintiff's damages at $28,836 and (b) finding the issues in favor of defendant Friedhofen. In due time, defendant Robertson-Drago filed its motion "for a new trial as to all parties, or in the alternative, to order a remittitur of the verdict rendered in favor

1. Hall averred his then familiarity with the statutory provision that "[t]he driver of an emergency vehicle may . . . [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation." § 304.022, para. 4, subpara. (2), RSMo 1969, V.A.M.S. The accident under consideration occurred shortly prior to the effective date of the 1971 amendment (Laws of 1971, pp. 323–324; H.B.113), which, however, made no here material or significant change in any statutory provision.

of plaintiff and against this defendant." On the 84th day thereafter, to wit, on July 6, 1974, the court entered "the following order":

"July 6, 1974: Motion for New Trial having been argued and briefs submitted and said matter having been fully considered, the Motion for New Trial is overruled on the condition plaintiff remitt (sic) the sum of $3,836.00; otherwise Motion for New Trial filed by defendant sustained as to matter of damages only; it is therefore the order and judgment plaintiff have and recover the amount of $25,000.00 against defendant Robertson-Drago and defendant Friedhofen discharged and case dismissed as to said defendant and costs taxed against defendant Robertson-Drago. Clerk ordered to notify parties of entry this date."

It will be noted that, although the "order" neither stated nor suggested that plaintiff had made the specified remittitur or even indicated a willingness to do so, the court immediately proceeded to make the quoted minute or docket entries purporting to enter a judgment for $25,000 against Robertson-Drago. And, that there had been no such remittitur or indication of willingness to remit was evidenced and confirmed by the subsequent bold and unequivocal declaration that *"[p]laintiff, Georgia White, does not accept the judgment and order of the Court of July 6, 1974,"* which was included in the "Statement of Jurisdiction on Appeal" filed by *plaintiff* on July 16 with her notice of appeal from "the judgment and order" of *July 6.* (Emphasis ours)

On July 15, 1974, *defendant Robertson-Drago* filed its timely notice of appeal from the judgment entered of record on *April 11, 1974,* upon the jury verdict then returned.

### Plaintiff's Appeal—Case No. 9785

■ Our initial observation is that obviously the above-quoted entries on *July 6, 1974,* were nothing more than minute or docket entries; and, by being cognominated collectively as a "judgment" in plaintiff's notice of appeal, they were not transmogrified into a judgment from which an appeal might be taken. *Cochran v. DeShazo,* 538 S.W.2d 598, 601(6) (Mo.App.1976); *Williams v. Williams,* 480 S.W.2d 525, 527(3) (Mo. App.1972).

■ Furthermore, plaintiff Georgia White has filed here only a "Respondent's Brief" in answer to the "Appellant's Brief" of defendant Robertson-Drago in our Case No. 9786 and thereby has abandoned plaintiff's appeal in our Case No. 9785. Rule 84.04(j), V.A.M.R.[2] Accordingly, plaintiff's appeal should be, and hereby is, dismissed.

### Defendant Robertson-Drago's Appeal—Case No. 9786

■ On its appeal from the judgment of $28,836 entered upon the jury verdict, Robertson-Drago presents six points, several of which are not without merit and in their totality *might* be found to constitute reversible error justifying retrial on all issues. *Faught v. Washam,* 329 S.W.2d 588, 604(30) (Mo.1959). However, meticulous and prolonged consideration of the transcript and briefs have brought us to the settled conclusion that the case should be remanded as to defendant Robertson-Drago for retrial on the issue of damages only.

The hereinbefore-quoted remittitur order entered in the trial court was in somewhat unconventional form and language, particularly in that it fixed no specific period within which plaintiff might avail herself of the option thereby accorded to avoid a retrial on the issue of damages. However, no complaint or criticism concerning the form of the remittitur order has been voiced by either plaintiff or defendant, and it is clear that plaintiff unequivocally refused to remit.

On the transcript presented to us, which we have seined in detail and pondered at length, we are constrained to conclude (a)

---

**2.** "(j) Cross-Appeals. Where cross-appeals are involved each appellant shall file an appellant's brief and may file a reply brief and each respondent shall file a respondent's brief in answer to the cross-appellant's brief."

that plaintiff Georgia White's appeal in our Case No. 9785 should be and accordingly is dismissed and (b) that in our Case No. 9786, recognizing and giving effect to the trial court's remittitur order which plaintiff summarily rejected, the cause should be and accordingly is remanded to the Circuit Court of Howell County as to defendant Robertson-Drago for retrial on the issue of damages only.

It is so ordered.

TITUS and FLANIGAN, JJ., concur.