In re ESTATE OF Emma Edith HUSKEY, deceased, Eugene Wilson, Administrator, et al., Plaintiffs-Respondents,

v.

Bonnie O. MONROE, Robert G. Huskey and Citizens Bank of Newburg, Defendants-Appellants,

and

Centerre Bank of Rolla, Defendant.

Nos. 13124, 13172 and 13178.

Missouri Court of Appeals, Southern District, Division Two.

June 14, 1984.

Motion for Rehearing or Transfer Denied July 3, 1984.

Applications to Transfer Denied Sept. 11, 1984.

Harvey J. Schramm, Clayton, for defendant-appellant Bonnie O. Monroe.

Virginia I. Nye, Rolla, for defendant-appellant Robert G. Huskey.

William C. Morgan, Waynesville, for defendant-appellant Citizens Bank of Newburg.

Dan L. Birdsong, Routh, Thomas & Birdsong, Rolla, for plaintiffs-respondents.

HOGAN, Judge.

This is a proceeding to discover assets brought under the provisions of § 473.340, RSMo 1978,[1] by the administrator and collateral kindred of Emma Edith Huskey, who died intestate in Phelps County on December 12, 1981, at age 66. Primarily at issue was the interest vel non of defendants Bonnie O. Monroe and Robert G. Huskey in four "money market" certificates in the total amount of $52,000 and two passbook savings accounts in the total amount of $14,852.83. Various collateral issues were tried and resolved but upon the main issue, the trial court found for the plaintiffs and against the defendants. In this court, the principal issue tendered is whether title to the certificates vested in defendants Monroe and Huskey upon the intestate's death as proceeds of a joint deposit within the meaning of § 362.470.

The slender record tells us very little about Mrs. Huskey or her husband. We are able to glean from the record and the documents filed here that the intestate was married to George S. Huskey in 1936; that George S. Huskey died September 25, 1981, and that they lived on a 25-acre tract of land near Newburg. Defendant Robert Huskey is George Huskey's son; he was reared by his father and stepmother, the decedent. Defendant Monroe is Mrs. Huskey's niece.

We take the appeals as submitted and consider those matters which counsel consider to be important. So taken and considered, the record shows that the first certificate with which we are concerned was issued by the Citizens Bank on September 8, 1981, in the amount of $18,000. The certificate is made payable to "George or Edith or Robert G. Huskey." The second certificate was issued by the same bank on September 14, 1981, in the amount of $10,000. This certificate was made payable to "George S. or Emma E. or Robert G. Huskey."

The third and fourth certificates were issued by the same bank. Both were dated August 6, 1981. Both were issued in the amount of $12,000; both were made payable to "George S. or Emma E. Huskey or Bonnie O. Monroe." It stands conceded that either the intestate or George S. Huskey, or both, furnished all the money with which all four certificates were purchased; the intestate affixed her signature to indicate receipt of the instruments, and George S. Huskey was alive at the time the certificates were purchased. All four certificates were placed in a safety deposit box at the Citizens Bank.

---

1. References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (13th ed. 1982), except where otherwise noted.

Shortly after Mrs. Huskey's death, defendant Robert Huskey removed the certificates from the deposit box. He obtained cash in the amount of $28,000. He delivered the other two certificates to defendant Monroe, who realized the proceeds of the certificates delivered to her in the amount of $24,000.

One of the two savings accounts in controversy was held by the Citizens Bank. There was $8,542.60 in this account. Defendant Monroe withdrew the proceeds of this account, which we shall discuss further. The other savings account was held by the Centerre Bank of Rolla; there was a balance of $6,310.23 in this account when Mrs. Huskey died. The Centerre account was in the form contemplated by § 362.470 and the trial court found the proceeds of this account were not assets of the estate. The trial court was correct and we need not consider the Centerre savings account further.

The trial court made findings of fact and conclusions of law, amended those findings within 30 days and concluded: 1) that the decedent was the owner of all four of the certificates issued by the Citizens Bank; 2) that the intestate was the owner of the passbook savings account held by the Citizens Bank; 3) that the Citizens Bank had unlawfully paid the funds represented by the four certificates to Huskey and Monroe; and 4) that the Bank of Newburg had wrongfully paid the savings account held in the names of the intestate, her husband and defendant Monroe to defendant Monroe.

The court therefore ordered: 1) that the estate have and recover the sum of $30,742.93 from defendant Robert Huskey, such sum representing the principal and accrued interest realized from surrender of the certificates and Huskey's withholding of those proceeds from the estate; and 2) that the estate have and recover the sum of $37,766.94 from defendant Bonnie O. Monroe, that sum being the amount realized by her as proceeds of two certificates issued by the Citizens Bank and the savings account held by that bank. The court also entered judgment against the Citizens Bank for the entire amount it had paid to defendants Huskey and Monroe plus accrued interest, the amount of that judgment to be reduced pro tanto by the amount recovered from defendants Monroe and Huskey. By conditional assignment, cash tender and supersedeas bond, the alternative judgments rendered have been stayed pending the decision of this court.

■ The Citizens Bank of Newburg's appeal has been styled Appeal No. 13178. The bank appealed promptly, but thereafter filed no brief. Its appeal was dismissed but was later reinstated. After reinstatement the bank asked to "adopt the briefs" of the other two appellants and this court allowed it to do so. Nevertheless, we find on full examination of the record that no alleged error in finding against the defendant Citizens Bank of Newburg has been briefed or presented and accordingly, the appeal of the defendant bank must be considered as having been abandoned. See: *White v. Robertson-Drago Funeral Home, Inc.,* 552 S.W.2d 47, 49[2] (Mo.App.1977); *Charles Palermo Co., Inc. v. Wyant,* 530 S.W.2d 15, 17[1] (Mo.App.1975).

■ Defendants Huskey and Monroe appealed separately; the appeals were consolidated for purposes of argument, but those assignments of error which are duplicative will be considered together. We bear in mind two basic principles which govern the scope of our review. In this bench-tried case, we review under the provisions of Rule 73.01(c), as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976), and the appellants have the burden to demonstrate the judgments are erroneous. *Estate of Linck,* 645 S.W.2d 70, 74[1, 2] (Mo.App.1982). Further and fundamental is the rule that contentions not put before the trial court will not be considered here; an appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982); *School District of Kansas City v. Smith,* 342 Mo. 21, 25, 111 S.W.2d 167, 168 (1937).

The principal point before the court is whether the proceeds of the certificates became the property of the defendants by operation of law upon the intestate's death. This contention is tendered by defendant Huskey's third and defendant Monroe's first assignment of error. Essentially, the defendants argue that the certificates comply with the requirements of § 362.470. Resolution of this question requires a partial construction of § 362.470.1.

## I

### (a)

#### (Provisions of the certificates)

To put this contention in perspective, we must first consider the provisions of the four certificates. Each certificate bears the legend "money market certificate." One of the two certificates claimed by defendant Huskey recites that the "depositor" is "George S. or Emma E. or Robert G. Huskey." The other states the "depositor" is "George or Edith or Robert G. Huskey." The two certificates claimed by defendant Monroe recite that the "depositor" is "George S. or Emma E. Huskey or Bonnie O. Monroe." All four certificates recite: "The amount shown above has been deposited, and is payable to the depositor upon presentation and surrender . . . properly endorsed, at maturity." The certificates are neither transferable nor negotiable. They are not therefore instruments within the intent and meaning of § 400.3–116; that section speaks only to negotiable instruments. Neither are they ordinary certificates of deposit; they are simply time certificates which represent a time deposit. We reiterate and emphasize that neither defendant furnished any of the money which went to purchase the certificates and that George Huskey was alive at the time the certificates were purchased.

### (b)

#### (Defendants' contention)

The defendants insist upon what they call a "literal reading" of the first sentence of § 362.470.1. They cite no authority except one or two backward glances given the statute by other districts of the court of appeals. The language upon which our attention is focussed is as follows:

> "When a *deposit is made* by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants *or* in form to be paid to any one or more of them, *or* the survivor or survivors of them . . . the deposit thereupon . . . shall become the property of these persons as joint tenants . . . ." (Our emphasis.)

The defendants argue that this language, which first appeared Laws of Mo.1977, p. 554, provides three alternative methods of creating a statutory joint tenancy. More specifically, they say that if a deposit is made: a) as joint tenants, or b) in form to be paid to any one or more of the depositors, or c) is made payable to the survivor or survivors of the depositors, then the requirements of the statute are met. So, simply because three persons are designated as the "depositor," defendants would have it that the statute was complied with and they are entitled to the proceeds of the certificates, although each certificate recited only that it was payable to "the depositor," and not to the depositor or survivor and even though the words "joint tenants" appear nowhere on the face of the certificates.

### (c)

#### (Applicable principles)

A general discussion of the use of "joint bank accounts" as will substitutes is well beyond the scope of this modestly-meant opinion.[2] We undertake only to apply ordinary precepts of statutory construction to ascertain the meaning and intent of the statutory language in question. Applying such precepts, we find defendants' argument to be unsound.

Before § 362.470 was amended substantially in 1977, Laws of Mo.1977, pp. 554–55, § 362.470, as material, read as follows:

**2.** See Note, Disposition of Joint Accounts: The Poor Man's Will, 53 Col.L.Rev. 103 (1953); Note, Joint Bank Accounts—Right of Survivorship, 39 Mo.L.Rev. 270 (1974).

"When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, *and* in form to be paid to any one or more of them, *or* the survivor or survivors of them, the deposit thereupon ... shall become the property of these persons as joint tenants ...." (Our emphasis.)

The amended statute, present § 362.470.1 as material, reads:

"When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, [as joint tenants *or* in form to be paid to any one or more of them, *or* the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise,] the deposit thereupon ... shall become the property of these persons as joint tenants ...." [Amendment in brackets.] (Emphasis ours.)

■ A first principle of construction, perhaps the most important in this case, is that we must presume the General Assembly is aware of existing declarations of law by the courts when it enacts statutes pertaining to the same subject; it is further presumed the General Assembly enacted legislation in accord with the law as declared by the courts. See *State ex rel. Missey v. City of Cabool*, 441 S.W.2d 35, 41 (Mo.1969); *Bushell v. Schepp*, 613 S.W.2d 689, 691–92[3] (Mo.App.1981). The phrase "in form to be paid to any one or more of them, or the survivor or survivors of them" has been part of our statute law, in one form or another, since 1915. Laws of Mo. 1915, p. 154. The phrase has never, to our knowledge, been construed to authorize two alternative methods of creating a statutory joint tenancy. *Smith v. Thomas*, 520 S.W.2d 132, 136[4, 5][6] (Mo.App.1975). We must presume the General Assembly knew this.

■ In part, the defendants' "plain meaning" argument is an argument that because the word "or" is usually an alternative or disjunctive conjunction, ordinary rules of grammar imperatively require a construction of the statute so as to authorize three alternative methods of creating a statutory joint tenancy within the meaning of § 362.470. The obvious answer to this argument is that although the word "or" is disjunctive in nature and ordinarily marks an alternative, such construction is not mandated when it is necessary to do otherwise to give effect to the legislative intent. See *Hawkins v. Hawkins*, 511 S.W.2d 811, 812[1] (Mo.1974); Crawford, Statutory Construction § 411, p. 765 (1940).

Without dwelling on the history of the statute at length, the obvious legislative purpose of the 1977 amendment was to broaden the scope of § 362.470 as a will substitute and to counter what the General Assembly perceived as judicial reluctance to accept it as such. For many years it was held that compliance with the statute created only a rebuttable presumption that the depositor meant to create a joint tenancy with right of survivorship. *In re Estate of LaGarce*, 487 S.W.2d 493, 500–1 (Mo. banc 1972), held that if the statute was complied with, in the absence of fraud, undue influence, mental incapacity or mistake, the statute must be given literal effect. The decision in *LaGarce* was given the force of statute by the second sentence of present § 362.470.1 and by subsection 2 thereof.

The words "as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise" represent, in our view, a legislative response to the strict construction of the statute by our courts, e.g., the requirement that the statement of ownership literally contain words of survivorship, *Ison v. Ison*, 410 S.W.2d 65, 70 (Mo.1967); the insistence that a note or certificate made payable in the *alternative* does not create a joint tenancy with right of survivorship, *Longacre v. Knowles*, 333 S.W.2d 67, 70–71[5, 6] (Mo. 1960), and, as we have said, general judicial reluctance to recognize "joint accounts" as will substitutes. See, e.g., *Melton v. Ensley*, 421 S.W.2d 44 (Mo.App.1967).

■ Nevertheless, it is one thing to say that amendments are meant to expand the scope of a statute and quite another to suggest a construction of the amendment which would only compound existing confusion. A basic rule of construction is that statutes should not be given a construction which will cause an unreasonable or absurd result. *Maryland Casualty Co. v. General Electric Co.*, 418 S.W.2d 115, 118 (Mo. banc 1967); *St. Louis Southwestern R. Co. v. Loeb*, 318 S.W.2d 246, 252 (Mo. banc 1958); *State ex rel. Dravo Corporation v. Spradling*, 515 S.W.2d 512, 517 (Mo.1974).

Perhaps "absurd" is not the proper word to characterize the defendants' argument, but "unreasonable" is perfectly proper. If defendants' construction were followed to its logical conclusion, a deposit to "the survivor or survivors of A and B" would be sufficient to comply with § 362.470. Such a disposition of assets, if not patently testamentary, would certainly lead only to further confusion and litigation to determine whether valuable consideration was given, whether the language of the instrument was intended to be testamentary and whether such disposition deprived the depositors (or makers) of the instrument of present control of the account.

(d)

(Conclusion)

■ We conclude the intent of the General Assembly was to permit a would-be joint depositor two alternatives: 1) either make the deposit payable to the depositors as joint tenants, or 2) otherwise make the account payable to one or more of the depositors or the survivor or survivors of them. It is now immaterial, for purposes of statutory compliance, whether the names of the depositors are "A and B," "A or B" or simply "A, B." This court is permitted to rearrange the language of a statute to give effect to the legislative intent. *Bank of Belton v. State Banking Board*, 554 S.W.2d 451, 457 (Mo.App.1977). The enumeration suggested above is sufficient to our limited purposes.

■ The certificates do not conform to the statute, because the depositors are not named as joint tenants, nor are they certificates "in form to be paid to any one or more of [the depositors] or the survivor or survivors of them." *Smith v. Thomas*, 520 S.W.2d at 136. The authorities cited by the defendants, particularly *Blue Valley Federal Sav. and Loan v. Burrus*, 637 S.W.2d 737, 742, n. 3 (Mo.App.1982), are not convincing. What was said in the footnote in *Blue Valley* was not necessary to that decision, and the citation of *Thummel v. Thummel*, 609 S.W.2d 175 (Mo.App.1980), is inapposite because present § 362.470 was not involved. The citation of *Estate of Linck*, 645 S.W.2d at 75, is likewise inapt because there the court adopted the same construction we adopt here: "... [T]he statutes ... require no more than that the account be opened or maintained in the names of two or more persons as joint tenants or in the form to be paid to any of them or the survivors." The arguments advanced as defendant Huskey's point three and defendant Monroe's point one are without merit.

II

(Were the trial court's findings technically sufficient?)

The substance of defendant Monroe's third point and defendant Huskey's first point is that the trial court's finding that the decedent was the "owner" of the four certificates at her death does not satisfy that part of § 473.340.3 which requires the probate division to determine the persons who have an interest in the property and further determine the nature and extent of any such interest. The points border on being frivolous. The word "owner" in its restricted sense means the legal owner and in its broader sense, any person beneficially interested in the property, *Granite Bituminous Paving Co. v. Parkview Realty & Improv. Co.*, 168 Mo.App. 468, 480, 151 S.W. 479, 481 (1912), but in everyday, on-the-street parlance, the word "owner" means the person in whom the legal or equitable title rests. Ballentine's Law Dic-

tionary 906 (3d ed. 1969). It was unnecessary for the probate division to add intensive adjectives, such as "sole and absolute" or to indicate why or by what means the decedent acquired her interest. The point is without merit.

We now turn to the defendants' separate points. In defendant Huskey's appeal, No. 13172, three assignments of error remain to be considered. Because only one of those assignments is substantial, it is convenient to consider them together.

### III

### (a)

*(Did the evidence establish an "intent" to create a joint tenancy with right of survivorship even if the statute did not comply with § 362.470?)*

By his fourth assignment of error, defendant Huskey seizes upon general statements made by this court in *Melton v. Ensley,* 421 S.W.2d 44, and *Conqueror Trust Co. v. Craig,* 204 Mo.App. 650, 218 S.W. 972 (1920), and contends that even if § 362.470 was not complied with, the "intent" of the depositors controls, and the evidence establishes that George and Emma Huskey intended to create a joint tenancy with right of survivorship.

■ We regard the citation to *Conqueror Trust Co. v. Craig,* 204 Mo.App. 650, 218 S.W. 972, as inapposite. Apparently this court believed that § 168, R.S.Mo.1909, as amended Laws of Mo.1915, pp. 190–91, which read much as § 362.470 did before its amendment in 1977, had been complied with, although the substance of the certificate is not set out. The statement taken from *Melton v. Ensley,* 421 S.W.2d at 52, must be read in context. The whole statement is:

> "... It is the intention of the depositor which controls, and where there is no deposit contract or presumption of joint tenancy, the simple use of 'and' or 'or' or 'and/or' to join names to an account does not, per se, indicate an intention to create a joint tenancy with the incident of survivorship."

We adhere to this statement; taken in context it is an accurate statement of the general law in the absence of statute. Note, supra, 53 Col.L.Rev. at 104, nn. 11, 12.

■ As we shall see, however, the certificates were in fact entirely property, purchased before George Huskey's death. The only expression of intent applicable to the certificates at the time of purchase came from the intestate *after* her husband's death. Defendant Huskey testified he contributed no funds to purchase the certificates. The testimony of Mr. Burns, vice-president of the Citizens Bank of Newburg, though vague, permits the inference that the certificates represented the same money reinvested 10 or 15 times. So, the only evidence of the depositors' intent before the court was that George and Emma Huskey maintained a joint account in three names joined by "or." Such evidence, standing alone, does not indicate an intention to create a joint tenancy. *Ison v. Ison,* 410 S.W.2d at 70[10]; *Melton v. Ensley,* 421 S.W.2d at 54.

In connection with the claim that the depositor's "intent" is controlling, defendant Huskey reiterates and emphasizes testimony given by his son, to the effect that he was told by the intestate his father was to have the certificates at her death. Of course, the trial court was at liberty to disbelieve the testimony of this witness, even though it was uncontradicted. *Dambach v. James,* 587 S.W.2d 640, 643 (Mo. App.1979). However, we are not convinced that the question whether there was a gift of the certificates *after* George Huskey's death is properly before us. Defendant Huskey's trial brief, included in the legal file, indicates no such theory was ever advanced as such in the trial court. As we have said, contentions not presented to the trial court cannot be assigned as error here, for this court will not convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d at 36.

### (b)
### (Was the evidence sufficient to support the judgment?)

Defendant Huskey contends there was no evidence to support the judgment that the proceeds of the certificates were the property of the intestate. His argument overlooks the case law, which for many years has been that a bank account held in the names of husband and wife and the accretions thereto are presumed to be held by the entirety even though the account does not designate the parties as husband and wife, and this is true irrespective of the statutes relating to joint accounts. *Fulton v. Fulton*, 528 S.W.2d 146, 157–58 (Mo.App.1975); *State Bank of Poplar Bluff v. Coleman*, 241 Mo.App. 600, 608–9, 240 S.W.2d 188–90 (1951). This presumption obtains whether the husband and wife or both furnished the monies which went into the account. *Fulton v. Fulton*, 528 S.W.2d at 158. Of course, the presumption is rebuttable, but the evidence to rebut it must be so strong, clear, positive and definite as to leave no doubt in the trial court's mind. *In re Estate of Jeffries*, 427 S.W.2d 439, 444[3] (Mo.1968). Upon the death of one tenant by the entirety, the other spouse succeeds to the ownership of the whole title, not because of survivorship but because there is no spouse to share in the title. *Schwind v. O'Halloran*, 346 Mo. 486, 493, 142 S.W.2d 55, 58 (1940); *In re Estate of King*, 572 S.W.2d 200, 211 (Mo. App.1978). If the trial court found no statutory or other joint tenancy was created by the addition of defendant Huskey's name to the certificate, as it might well have found, then the certificates were the property of the intestate at her death and were properly included in her estate.

Now, as to the remaining two points which are peculiar to Appeal 13124, the appeal of defendant Bonnie O. Monroe.

### IV
### (Was the passbook savings account at the Citizens Bank of Newburg an asset of the estate?)

Defendant Monroe argues that the trial court erred in finding the proceeds of a passbook savings account held by the Citizens Bank of Newburg were an asset of the estate. Several of the arguments advanced by defendant Monroe have already been considered and our conclusions will not be repeated. The savings account at the Citizens Bank of Newburg was held in the names of George S. Huskey, Emma E. Huskey and Bonnie O. Monroe. There was a memorandum of agreement, signed by George and Emma Huskey and by defendant Monroe (plaintiffs' exhibit 15) which read as follows:

> "We agree and declare that all funds now or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common ...."

This agreement falls squarely within the ruling of *LaGarce* and created a joint savings account within the purview of former § 362.470, in effect when the account was established. There is indeed evidence that the intestate "[came] in the bank and ask[ed] [to have an employee] remove Bonnie's name from this passbook savings." The bank employee "drew two lines" through Bonnie's name on the passbook, and gave the intestate a new form of "signature card" [agreement] but no new agreement was ever executed. All this discussion occurred in February 1979, well before George or Emma Huskey died. We take the case of *McGee v. St. Francois County Savings and Loan Ass'n*, 559 S.W.2d 184, 188[3] (Mo. banc 1977), to be controlling. It was the clear and unambiguous language of the contract which controlled the ownership of the account, *Melton v. Ensley*, 421 S.W.2d at 51, and a contemplated change never effected would not destroy the joint tenancy originally created. Such is the intent and holding of both *LaGarce* and *McGee*. We conclude, therefore, that the trial court incorrectly applied the law to the passbook savings account held by the Citizens Bank of Newburg, that defendant Monroe succeeded to

the proceeds of that account as a surviving joint tenant, and that the proceeds thereof are not assets of the estate.

The defendant's fourth assignment of error—that the trial court should have disqualified himself because he was once associated with plaintiffs' attorney in practice—is without merit in the circumstances.

To sum up and correlate our conclusions, we find that Appeal No. 13178, the appeal of the Citizens Bank of Newburg, must be considered abandoned; the judgment of the probate division as to the four certificates is affirmed; the judgment of the probate division as to the savings account held by the Citizens Bank of Newburg is reversed because the proceeds of that account were properly and lawfully paid to defendant Monroe. The cause is remanded to the Probate Division of the Circuit Court of Phelps County with directions to set aside the Amended Final Judgment on Discovery of Assets and enter a new judgment, effective the same date, in accordance with the opinion of this court.

MAUS, P.J., and PREWITT, J., concur.