**Vernell McGEE, Respondent,**

v.

**ST. FRANCOIS COUNTY SAVINGS AND LOAN ASSOCIATION et al., Appellants.**

**No. 60314.**

Supreme Court of Missouri,
En Banc.

Dec. 19, 1977.

Geoffrey L. Pratte, Farmington, for appellants.

Eric C. Harris, Flat River, for respondent.

FINCH, Judge.

This is an appeal by defendants from a judgment which determined that plaintiff as surviving joint tenant was the owner of two savings certificates issued by the St. Francois Savings and Loan Association (hereinafter S & L). The Court of Appeals, St. Louis District, reversed and remanded with directions to enter judgment that the certificates were the property of the estate of Walter McGee. One of the participating judges concluded that the majority opinion is contrary to the decision of this court in the case of *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo. banc 1972), and requested transfer of the case to this court pursuant to Mo.Const., art. V, § 10. We now decide it as though here on direct appeal. We reverse and remand with directions.

The facts are undisputed because the case was tried on a stipulation of facts. Prior to February 11, 1974, Walter McGee owned certificate No. 207 for $2,000 issued by S & L. It had been issued originally in the names of Walter McGee and his wife. At her death in September 1973, S & L, at

McGee's request, simply lined through her name so that the certificate stood in the name of Walter McGee, the surviving spouse. Walter McGee also owned a savings certificate for $18,000 which was renewable on February 11, 1974. On that date McGee presented that certificate and received a renewal certificate, No. 964, which listed him as sole owner.

Sometime later during the day on February 11, 1974, Walter McGee brought certificates 207 and 964 to S & L and requested that the name of Vernell McGee, his nephew, be added as joint tenant with right of survivorship. Pursuant to that request the officers and agents of S & L added "Vernell McGee 2/11/74" to certificate No. 207 and stamped thereon the words "as joint tenants with right of survivorship and not as tenants in common." In addition, "Vernell McGee" was added to S & L's account card and a new signature card was signed by both Walter and Vernell McGee. On certificate No. 964 they added "and Bernell McGee"[1] and stamped the words "as joint tenants with right of survivorship and not as tenants in common." At the same time the words "and Vernell McGee" and "as joint tenants with right of survivorship and not as tenants in common" were added to S & L's account card and both Walter McGee and Vernell McGee signed a new signature card.

On March 7, 1974, Walter McGee again appeared at S & L with the two certificates. He requested that both be changed to his name only. In response, the officers and agents of S & L, in the case of the savings account represented by certificate No. 964, lined through the words "and Bernell McGee" on the certificate and added figures "3/7/74." On the signature card for this account, S & L lined through the name and signature of Vernell McGee and added the figures "3/7/74." On the account card, S & L lined through the name "Vernell McGee" and the words "as joint tenants with right of survivorship and not as tenants in common" and added the figures "3/7/74." In response to the request concerning the

1. Vernell McGee was also known as Bernell McGee.

account represented by certificate No. 207, the officers and agents of S & L lined through the words "Vernell McGee 2/11/74" on the certificate. The name and signature of Vernell McGee likewise was stricken from the signature card and the figures "3/7/74" added thereto. Vernell McGee's name also was lined through on the account card.

Walter McGee died on June 28, 1974. At the time of his death the two savings certificates were in his safety deposit box. Vernell McGee was appointed executor of his estate and on August 2, 1974, at the suggestion of the attorney for the estate, he cashed in certificate No. 207 and applied the proceeds on the funeral bill. Thereafter, he made a claim against the estate, asserting that certificate No. 207 was his personal property as surviving joint tenant and that he should receive the proceeds thereof.

After numerous demands on S & L to pay him on certificate No. 964, plaintiff brought this suit against S & L and against the Walter McGee estate, seeking a determination that he owned both certificates and was entitled to recover thereon. The probate claim on certificate No. 207 was consolidated with this action. The trial court held that the actions of Walter McGee and the officers and agents of S & L on February 11, 1974, established a statutory joint tenancy with right of survivorship in both savings certificates but that the action of Walter McGee and the officers and agents of S & L on March 7, 1974, did not have the legal effect of destroying the joint tenancies in the two certificates theretofore created on February 11, 1974. Accordingly, the trial court held that the joint tenancy continued until the death of Walter McGee and that plaintiff then became the owner of the certificates as surviving joint tenant.

■ This is a court tried case. Our review is pursuant to Rule 73.01, V.A.M.R., as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We are to uphold the judgment unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. In this case the facts were stipulated and the trial court found the facts in accordance with that stipulation. We accept those findings and do not disturb the judgment on an evidentiary basis. We do conclude, however, that in holding that the actions of Walter McGee and the officers and agents of S & L on March 7, 1974, did not have the effect of terminating the joint tenancy in certificates 207 and 964, the trial court erroneously declared and applied the law.

The single issue to be resolved is whether what Walter McGee and personnel of S & L did on March 7, 1974, had the legal effect of terminating the joint tenancy and transferring the two accounts to Walter McGee. Plaintiff argues that under *LaGarce, supra*, it did not. *LaGarce* dealt with a situation wherein August LaGarce owned a savings certificate which he had transferred by the savings and loan association to the names of August LaGarce, James Mouldon and Leona Mouldon as joint tenants with right of survivorship and not as tenants in common. After the revised certificate was handed to him by an employee of the association, LaGarce handed it to the Mouldons. There was conversation to the effect that if LaGarce later wanted the certificate back, he could get it. Subsequently, LaGarce and his wife, who had been separated, were reconciled and he requested that the Mouldons return the certificate in order that it could be changed and placed in the names of LaGarce and his wife. However, the Mouldons did not turn over the certificate and LaGarce died while it was still in the possession of the Mouldon's attorney.

In a proceeding to discover assets, the executrix of the estate of August LaGarce sought to recover the funds in the savings account. Her primary contention was that under existing decisions the revised certificate did not create a valid joint tenancy because LaGarce intended only to make a testamentary disposition, not surrender control at that time, and that this did not constitute a valid inter vivos gift. This court held that a joint account with right of survivorship had been created pursuant to

§ 369.150, RSMo 1969.[2] Overruling earlier cases which, in spite of the provisions of § 369.150, had held that a joint tenancy was not created if the intent was primarily to arrange a disposition at death, the court held, 487 S.W.2d at 500, that if a certificate is issued in the statutory form it creates a statutory joint tenancy which must be recognized and given effect without applying common law concepts to determine whether a valid joint tenancy has been created.

In *LaGarce* the executrix also contended that even if the savings account had been converted to a joint account by means of the addition of the names of the Mouldons to the certificate and the execution of the other papers, the joint tenancy was revoked by LaGarce prior to his death by his efforts to get the certificate back and his expression of an intention to revoke the joint tenancy with the Mouldons and create a new one with his wife. This contention was rejected. The court determined that, at most, it disclosed an intention to revoke and that such intent could not be equated with actual termination. In so holding the court said at 501: "Even if the certificate had been delivered to August and he had possession thereof, there could not be an actual termination of the joint tenancy unless August had actually cashed in the certificate. An intent to terminate the joint tenancy agreement cannot be equated with actual termination."

Relying on the foregoing statement, plaintiff herein contends that *LaGarce* holds that the only method of terminating a statutory joint tenancy is to cash in the certificate and that Walter McGee did not do that with certificates 207 and 964. We disagree with plaintiff's interpretation of *LaGarce*. The quoted language holds simply that the evidence established only an intent on the part of LaGarce to terminate the joint tenancy and that this was insufficient to accomplish termination. Instead,

said the court, the evidence must show that actual termination was accomplished. The question of what actions by a joint tenant and the association would result in termination of a joint tenancy was not before the court. When the opinion said that there could not be a termination unless the certificate was cashed in, it was not undertaking to spell out specifics as to the method of terminating the joint tenancy in the savings account. It simply underscored by that language that mere intent to terminate is not enough and that the joint account must actually be terminated.

Section 369.174 provides that funds in a joint account "may be paid to any one of such persons during his lifetime." It does not provide any specific procedure or ritual which must be followed.[3] Payment could be accomplished in various ways. For example, Walter McGee could have surrendered the certificates to S & L and received cash or a check therefor. He also could have surrendered the old certificates and asked that they be cancelled and new replacement certificates issued in his individual name or in his name and the name of some other person or persons as joint tenants. The latter clearly would have constituted a "cashing in of the certificate" mentioned in *LaGarce*.

In this instance Walter McGee simply presented the certificates and asked that they be changed to his name alone. S & L instead of cancelling the old certificates and preparing new certificates, account cards and signature cards, elected to make the change on the face of the existing certificates and account and signature cards. It seems obvious that this represented a method regularly employed by S & L because they had utilized similar procedures in converting the certificates to jointly owned accounts and in changing the records to reflect the ownership of account 207 after the death of Walter McGee's wife.

---

2. Chapter 369, including § 369.150, was repealed in 1971 and a new chapter was enacted. Laws 1971, S.B. 3, § A. Sections 30 and 34 of S.B. 3 (now §§ 369.154 and 369.174) are the sections which pertain to joint accounts.

3. The statute does provide that by written instructions the joint tenant may require signatures of more than a single joint tenant to withdraw funds but that procedure was not utilized in this case.

■ We conclude and hold that the procedure utilized by S & L to accomplish the request by Walter McGee was permissible and effectively terminated the joint accounts, replacing them with accounts owned by Walter McGee individually. Section 369.154(3) provides that an association may issue any evidence of ownership of an account not prohibited by law or by a regulation of the savings and loan division. Minimizing record keeping and printing by utilizing the method employed was permissible. Perhaps it should be observed that such a practice may lead to disputes and litigation as it has in this case and, hence, is less desirable than cancelling old certificates and issuing new ones. However, that is not to say that the method used was not permissible. It should be noted that McGee did not undertake to make changes on the face of the certificates himself. He presented them to S & L with statements as to what he wanted to accomplish, first to create joint tenancies and later to terminate those tenancies and place the accounts in his individual name. These were things he had a right to do. He had contributed all the money. He held the certificates. Under § 369.174, and under the terms of the signature cards signed by Walter and Vernell, he was entitled to have the sums in the account paid to him. In legal effect, the actions taken by him and by S & L in response to his request did just that.

The decision we reach is consistent with and supported by *Jackson Savings & Loan Association v. Seabaugh*, 395 S.W.2d 260 (Mo.App.1965), *Carroll v. Hahn*, 498 S.W.2d 602 (Mo.App.1973), and *In re Estate of Hampton*, 547 S.W.2d 886 (Mo.App.1977). *Seabaugh* was a case in which Mr. Seabaugh, after opening a joint savings account with his daughter-in-law Lucy, took the certificate and passbook to the association and asked to have the account changed to the names of Seabaugh and his son Everett. The association made the changes on the certificate and passbook, striking Lucy's name, adding Everett's, and dating the changes.

In *Carroll* plaintiff's stepfather had plaintiff's name added to his account but six weeks later closed that joint account by surrendering the certificate and receiving in lieu thereof a certificate representing a joint account of the stepfather and a niece.

*Hampton* was a case in which the association, at Fred Hampton's request after he remarried, added the words "and Edna Hampton or either or survivor," to two certificates which he produced. Later, Fred Hampton surrendered the two certificates and received a single certificate issued in his name alone. He retained the certificate and at his death it was in his safety deposit box.

In all three of these cases it was held that the acts of the joint tenant who had contributed the money and held the certificate, together with the actions of the association to comply with the requested termination of the existing joint account, were sufficient to terminate the joint account. Whether the savings and loan association elected to cancel the old certificate and issue a new one or to make the changes on the existing certificate and records, the result was the same. The fact that *Seabaugh* preceded *LaGarce* is of no consequence. As noted previously, *LaGarce* did not undertake to define what actions by the joint tenant and association constituted termination or "cashing in." Rather, the court in *LaGarce* referred to termination only insofar as necessary to distinguish an intended act, or perhaps more precisely, a *contemplated* act, from a completed act. Thus, the holding in *Seabaugh* was not disturbed by *LaGarce*.

We hold that the acts of Walter McGee and S & L on March 7, 1974, terminated the joint tenancies in certificates 207 and 964. Thereafter, the accounts were the property of Walter McGee. Accordingly, the judgment is reversed and the cause remanded with directions to enter judgment that the estate of Walter McGee is the owner of the certificates in question.

All concur.