**GERALDINE ENTERPRISES, INC.,**
**Plaintiff-Respondent,**

v.

**Paul O. JOHNSON and Geneva Ann Johnson, Defendants-Appellants.**

**No. 11980.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 10, 1981.

Appellant's Motion for Rehearing
and to Transfer Denied
Dec. 7, 1981.

Application to Transfer Denied
Jan. 18, 1982.

Loren R. Honecker, Sherwood, Honecker & Bender, Wallace N. Springer, Jr., Spring-

er & Haseltine, Springfield, for defendants-appellants.

Jerry L. Redfern, Paul G. White, Neale, Newman, Bradshaw & Freeman, Springfield, for plaintiff-respondent.

PER CURIAM:

In this court tried case the plaintiff corporation recovered a judgment for $36,-377.09 for wrongful foreclosure. The defendants appeal presenting two points of alleged error, each dealing with the sufficiency of a facet of the evidence to support the judgment. This requires a summary of the evidence. In considering those points, this court is to give "[d]ue regard ... to the opportunity of the trial court to have judged the credibility of witnesses", Rule 73.01(c)(2) and the judgment of the trial court should be affirmed "unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law." *McGee v. St. Francois Cty. S. & L. Assn.*, 559 S.W.2d 184, 186 (Mo. banc 1977). Except for reference to conflicting evidence, the evidence will be summarized in "a light most favorable to the judgment of the trial court, and defers to the judgment of the trial court on matters in which the evidence is in conflict". *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481 (Mo. banc 1980).

The plaintiff corporation is a closely held corporation in which Gerald B. Graham and Nadine Graham, his wife, were the principal stockholders and officers. Nadine Graham died before this action was tried. The property involved is a motel at Branson which was built by the defendants. At some undisclosed time the motel had been acquired by another corporation owned or controlled by the Grahams. The Grahams sold their stock in this corporation to one Charles Hulen. The property was subject to a first deed of trust in favor of the Republic National Life Insurance Company of Dallas, Texas (hereinafter called Republic National). This deed of trust secured an obligation payable in installments of $2,140 per month. The property was also subject to a second deed of trust in favor of the defendants. Charles Hulen left the area and the obligations secured by the first and second deed of trust were in default.

In December of 1971 the defendants were in the process of foreclosing upon their second deed of trust. The Grahams were interested in reacquiring the motel and started negotiations with the defendants to that end. During those negotiations, the defendants told the Grahams that the defendants could not pay the November and December, 1971, installments upon the obligation due Republic National. The plaintiff corporation paid those installments by its check dated December 31, 1971, in the amount of $4,104. This check bore the notation "Nov. & Dec., payments Empire Inn., Branson, Mo. ML-6801". The check was accepted by Republic National. At this time the defendants gave their check in the amount of $4,100 to the plaintiff. Graham testified the plaintiff's payment to Republic National was a loan to the defendants and the check of the defendants was to evidence that loan. Defendant Paul O. Johnson testified the defendant's check was given as security that a purchase agreement would be worked out.

The defendants did buy the property at this foreclosure sale. By a lease dated January 1, 1972, the defendants leased the property to the plaintiff for the months of January and February, 1972, for a rental of $2,140 per month. The lease was extended to include March, 1972. The plaintiff paid the rent by paying the January, February and March, 1972, installments of the obligation secured by the first deed of trust to Republic National.

On March 30, 1972, a contract was entered into by the plaintiff, the Grahams, the Grahams' then attorney, and the defendants. The financial and property affairs of these parties were divers and intertwined and included transactions other than the sale of the property in question. While some of these other financial affairs were involved and incorporated into this contract, it is not necessary to recount these provisions in detail. The contract did provide for

the sale of the motel by the defendants to the plaintiff for $460,000, which purchase price was specifically declared to include the obligation due Republic National. The price was to be paid by the plaintiff making and delivering its note in that amount and second deed of trust securing that note to the defendants. The contract was consumated on March 30, 1972, and the defendants conveyed the property to the plaintiff in exchange for a such note and second deed of trust. The note was in the amount of $460,000, with interest at 8%, payable in monthly installments of $2,140 for the months of December, January, February and March of each year and monthly installments of $5,340 for the months of April, May, June, July, August, September, October and November of each year. If not sooner paid, the unpaid balance of the note became due on January 1, 1992. It provided for acceleration in the event of default in the payment of any installment or conveyance of any of the property without the written consent of the holders, or if for any reason the second deed of trust became subject to foreclosure. The second deed of trust contained two provisions of note. First, that upon demand the plaintiff would pay to the defendants additional monthly payments for each April, May, June, July, August, September, October and November equal to ⅛th of the estimated annual taxes and insurance premiums. Second, paragraph 12 read as follows: "Grantor understands that the real estate described herein is subject to a first deed of trust in favor of Republic National Insurance Company of Dallas, Texas, and further understands that out of payments made in connection with the note which this deed of trust secures that Beneficiaries shall make required payments on said first deed of trust. It is further convenanted, however, that any payment made by Grantor on said first deed of trust shall be and constitute a payment on the note which this deed of trust secures."

The plaintiff paid the April through October payments of $2,140 per month to Republic National. Gerald Graham and his then attorney testified that by agreement with the defendants, the plaintiff paid the defendants an additional $3,200 per month for the months of April through November, 1972, by the attorney giving the defendants corresponding credits on the defendants' note owned or controlled by the attorney. The plaintiff's check for the November and December, 1972, payments to Republic National did not clear the bank. On January 16, 1973, the attorney issued his check in payment of the December and January installments. It was accepted as such by Republic National.

The plaintiff did not pay the November, 1972 or February, 1973 installments to either the defendants or to Republic National. However, as stated, Gerald Graham and his attorney testified that the $4,104 paid by the plaintiff to Republic National was a loan to the defendants. They further testified that at the time of, but after the consummation of the contract, it was agreed by the defendants that instead of repaying the loan by honoring the check, the plaintiff should claim credit for two payments "when the snow flies". The defendants' check was returned and destroyed. The plaintiff claimed the installments he did not pay to Republic National were paid to the defendants by that credit. The trial court so found.

On February 2, 1973, the defendants' attorney wrote the plaintiff demanding that the plaintiff pay for the months of April through November, 1972, and thereafter, additional monthly payments equal to ⅛th of the estimated annual taxes and insurance premiums. The defendants estimated that sum to be $1,000 per month. The letter then demanded that "all back payments be made-up immediately, which would be in the sum of $8,000.00 and that future payments on the Note include the additional sum specified". The plaintiff was advised that this default had to be cured by February 15, 1973.

On February 5, 1973, a letter was written on behalf of both defendants to the plaintiff "calling the entire amount due and payable immediately. This is in response to your failure to make January and February

payments." The letter was signed by defendant Paul O. Johnson. These actions were protested on behalf of the plaintiff. The plaintiff tendered to the defendants the performance demanded by the attorney's letter of February 2, 1973, but such tender was refused. The defendants caused their second deed of trust to be foreclosed and purchased the property at the sale on May 4, 1973, for $100,000.

■ By their first point of alleged error the defendants assert one legal argument and three factual arguments. The legal argument is that the parol evidence rule bars altering the terms of the $460,000 note by a verbal agreement that in lieu of repaying the loan evidenced by the $4,104 check, the plaintiff could, "when the snow flies", claim credit for two payments upon that note. The parol evidence rule does not support the defendants' argument. The application of that rule has been succinctly stated in another wrongful foreclosure case. "We rule that the evidence of the conversation prior to the execution of the note was properly excluded, but that the conversation tending to prove an agreement subsequent to the execution of the note should have been admitted." *Edwards v. Smith*, 322 S.W.2d 770, 776 (Mo.1959). Also see *Willis v. Community Developers, Inc.*, 563 S.W.2d 104 (Mo.App.1978). In this case the evidence was that the verbal agreement was made after the note was executed and the transaction consummated.

■ In their first factual argument, the defendants advance many reasons why it is improbable there was such a verbal agreement. Suffice it to say the testimony of Graham and his attorney clearly constitute substantial evidence supporting the determination of the trial court that there was such an agreement. The defendants further assert that two payments upon the $460,000 note amount to $4,280 and the plaintiff's loan was only $4,104 and therefore, even if there was such a verbal agreement, there was a deficiency of $176 which justified the foreclosure. Without pursuing the other reasons why the defendants may not now advance this inconsistent position, that argument is refuted by the terms of the verbal agreement that the plaintiff could claim credit for two payments, without limitation as to the amount thereof.

■ The defendants next argue the plaintiff should not receive credit of $2,140 upon the $460,000 note for each $2,140 paid to Republic National because approximately $700 of each payment to Republic National was applied to taxes and insurance which were to be paid by the plaintiff. "It has often been held that a contemporaneous written contract, entered into between the original parties to a note, and connected with the note by direct reference or by necessary implication, may affect the payee's right to recover against the maker, and that the two instruments should be considered together as the entire contract." *Local Acceptance Company v. Kinkade*, 361 S.W.2d 830, 833 (Mo. banc 1962). This argument of the defendants is invalid in the face of the express provision of the deed of trust "[i]t is further convenanted, however, that any payment made by Grantor on said first deed of trust shall be and constitute a payment on the note which this deed of trust secures." The deed of trust did provide the defendants could demand for eight months of each year additional payments of one-eighth of the insurance and taxes. However, the defendants did not invoke this provision until their attorney's letter of February 2, 1973. There was evidence the plaintiff tendered compliance with that demand within the time limited in the letter.

■ The defendants' last factual argument pertains to the trial court's finding the plaintiff did pay the defendants eight $3,200 payments for 1972 by means of credit given the defendants upon obligations owned or controlled by Graham's attorney. They contend the evidence conclusively establishes the defendants could have been given credit for only seven payments of $3,200 on such obligations. They base this argument upon the fact that in May, 1973, the defendants paid the attorney $10,000 and that $10,000 plus eight payments of $3,200 each totals more than the obligations controlled by the attorney which are re-

ferred to in the contract. This argument is not valid in view of the testimony of that attorney that credit was given for eight payments, that there was a dispute between himself and the defendants concerning credits and balances on various obligations and concerning the right of the attorney to accelerate an obligation in the amount of $99,000, and that the payment of $10,000 was in settlement of that dispute and for forebearance of such acceleration. That the defendants were given credit for eight payments of $3,200 each is strongly corroborated by the letter of Paul O. Johnson of February 5, 1973, in which he cites default only in the payment of the January and February, 1973 installments. The finding of the trial court is supported by substantial evidence.

By the second point in the appellants' brief, Geneva Ann Johnson asserts there was not sufficient evidence to establish that she was bound by the agreements made by Paul O. Johnson in regard to credits upon the $460,000 note. In her argument she makes reference to credits for the two payments of $2,140 and the eight additional payments of $3,200. By the pleadings she admits that she and Paul O. Johnson purchased the property at the foreclosure sale. It is a reasonable inference from the evidence that she accepted the benefit of the December 31, 1971, payment of $4,104 by the plaintiff to Republic National. Under these circumstances "[s]light evidence of the agency of the husband for the wife is sufficient to charge her ...." *Bowen v. Loyd*, 589 S.W.2d 312, 317 (Mo. App.1979). The record does not support her assertion the plaintiff wholly failed to prove she was so bound. By her answer she admitted that Paul O. Johnson acted in her behalf in writing the letter of February 5, 1973, calling the note because of default in the January and February, 1973, payments. The trial court could have found that letter provided a strong inference she acknowledged and was bound in respect to the eight $3,200 payments. She was bound to have known that she and Paul O. Johnson did not make the November and December, 1971, payments to Republic National. She ac-

cepted the benefit of the agreement by which Paul O. Johnson arranged for the plaintiff to make those payments. Even though she was a defendant and a plaintiff upon a counterclaim for a deficiency judgment, she did not testify. "Her silence is a significant circumstance justifying an inference unfavorable to her claim that her husband was not acting as her agent ...." *Henry Evers Mfg. Co. v. Grant*, 284 S.W. 525, 527 (Mo.App.1926). The evidence of this case gives rise to a fair inference that she knew of the actions of Paul O. Johnson, *Murphy v. Olds*, 508 S.W.2d 249 (Mo.App. 1974) and is a sufficient basis for the trial court to have determined that she was bound by the actions of her husband. *Fallert Tool & Engineering Co. v. McClain*, 579 S.W.2d 751 (Mo.App.1979). The judgment is affirmed.

All concur.