HOME SAVINGS ASSOCIATION OF
KANSAS CITY, Respondent,

v.

June BRATTON, Respondent,

Louis John and Robert
Sanders, Appellants.

No. WD 37355.

Missouri Court of Appeals,
Western District.

Oct. 14, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

James W. Henry (argued), Kansas City, for appellants.

William A. Lewis (argued), Lee's Summit, for respondent.

Before NUGENT, P.J., and BERREY and GAITAN, JJ.

NUGENT, Presiding Judge.

In an interpleader action brought by Home Savings Association of Kansas City, the trial court awarded two certificates of deposit to respondent June Bratton. Robert L. Sanders, personal representative and

substituted party for Louis John Sanders,[1] deceased, appeals on the ground that the trial court erroneously relied upon *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. 1972) (en banc), as the controlling authority for its decision.

Applying the standard of review for court-tried cases announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976) (en banc), we hold that the trial court has neither erroneously declared nor misapplied the law and, therefore, affirm the judgment.

The events which eventually triggered the interpleader action began in 1972 when Louis John Sanders, an ailing widower, sold his home in Brunswick, Ohio, and moved to Kansas City to reside with his sister-in-law, June Bratton, her husband, Wesley L. Bratton, and their children. On January 29, 1972, Louis John Sanders, known to all as Uncle Louis, purchased two separate savings certificates entirely from his own funds. One certificate was in the amount of $10,000 and named Louis John Sanders, June Bratton and Wesley L. Bratton as joint tenants with right of survivorship and not as tenants in common. The other was in the amount of $20,000 and named Louis John Sanders and June Bratton as joint tenants with right of survivorship and not as tenants in common.

Uncle Louis immediately gave the certificates to June Bratton with the understanding that he would receive the income from the certificates during his life and the Brattons would receive the principal upon his death. In June, 1982, Mr. Bratton died, leaving Louis John Sanders and June Bratton as surviving joint tenants on both certificates. For more than twelve years June Bratton retained possession of the certificates, and Uncle Louis received all income from them to the time of his death.

In May of 1982, Uncle Louis went to Ohio for his annual visit to another niece and her husband, Barbara Sanders and Robert Sanders. During the visit, Uncle Louis decided not to return to the Bratton home in Kansas City, a decision allegedly based upon Uncle Louis' feeling that he had been ill-treated by members of the Bratton household. Uncle Louis remained in Strongville, Ohio, with Barbara and Robert Sanders until his death on November 20, 1984.

The events which detonated the contest over the two certificates of deposit began with a phone conversation in May of 1984 between Barbara Sanders in Ohio and June Bratton in Kansas City. June Bratton indicated that she intended to cash the two savings certificates in her possession. Later that day, Barbara Sanders discussed the matter with her husband, Robert, who telephoned June Bratton that evening to suggest that she not cash the certificates. The following day, Robert Sanders, alarmed by the possibility that Louis Sanders would no longer receive his interest check should June Bratton cash in the certificates and fearing that the principal would no longer be available should Uncle Louis become ill, alerted Uncle Louis.

Uncle Louis requested that Robert Sanders stop Mrs. Bratton from cashing the two certificates. Robert telephoned Home Savings on May 25, 1984, and spoke with Mary Westbrook, branch manager. He represented himself as executor of Uncle Louis' will (though Louis was then living) and also said that he had a power of attorney from Louis John Sanders. He wished to stop payment on the two accounts on behalf of Uncle Louis. Ms. Westbrook explained that in order to stop payment, he would have to sign and return the written authorization forms which she promised to mail to him. In the course of that conversation, Robert Sanders also mentioned that while still residing in Kansas City Louis Sanders had gone to Home Savings on several occasions to attempt to have June Bratton's name removed from the certificates. Ms.

---

1. Louis John Sanders died on November 20, 1984, while the interpleader action was pending. On February 4, 1985, the court ordered Robert L. Sanders substituted for Louis John Sanders as party defendant. Louis John Sanders and Robert L. Sanders were no kin, but Robert Sanders was related to Louis Sanders by marriage to Louis Sanders' niece, Barbara.

Westbrook explained that Uncle Louis could not terminate the joint tenancies in the accounts unless he presented the certificates themselves.

On May 26, 1984, June Bratton took the certificates to Home Savings with the intent to cash them in. Mary Westbrook informed her that Home Savings had stopped payment on the accounts on the authority of Robert Sanders' phone call of the preceeding day.

By June 1, 1984, Home Savings had received written stop order forms pertaining to each certificate. They were signed by Robert L. Sanders and dated June 1, 1984, and bore the following printed language:

You are hereby instructed to suspend payment on Savings Account No. and to permit withdrawals only on the signatures of all joint tenants until such time as this order has been cancelled in writing signed by all joint tenants and delivered to you.

In addition, Ms. Westbrook testified that she received a copy of a power of attorney from Louis John Sanders to Robert Sanders, prepared by Robert Sanders' attorney in Strongville, Ohio. However, that power of attorney was dated May 29, 1984, four days after Robert Sanders represented to Ms. Westbrook in his May 25 telephone call that he had a power of attorney to act for Louis John Sanders.

June Bratton testified that Uncle Louis had never asked her to return the certificates to him. But she testified that in a telephone conversation on May 23, 1984, "I felt Bob said that if I would send the C.D.'s to Uncle Louie, Uncle Louie would send me $5,000.00." She declined to do so and told Bob that "if Uncle Louie wanted the C.D.'s, he could call me and ask me for them."

On June 28, 1984, Home Savings filed a petition for interpleader to settle the dispute between June Bratton and Louis John Sanders and Robert Sanders over ownership of the savings certificates.

In its memorandum opinion, order and judgment entry of June 14, 1985, the trial court found that June Bratton was entitled to sole ownership of the two certificates based upon the following language from *In re Estate of LaGarce*, 487 S.W.2d 493, 501 (Mo.1972) (en banc):

Plaintiff has suggested in her brief that any transfer of the certificate was revoked by August [LaGarce] prior to his death. We do not agree. At most, the evidence shows an intent by the Mouldons, for a short period of time, to return the certificate, and an intent to terminate or sever the joint tenancy and not an actual severance thereof. Even if the certificate had been delivered to August [LaGarce] and he had possession thereof, there could not be an actual termination of the joint tenancy unless and until August had actually cashed in the certificate. An intent to terminate the joint tenancy agreement cannot be equated with actual termination.

I.

Mr. Sanders' argument on appeal is essentially that *LaGarce* is not controlling. According to *McGee v. St. Francois County Savings & Loan Association*, 559 S.W.2d 184, 187 (Mo.1977) (en banc), *LaGarce* simply emphasized that mere intent to terminate is not enough to actually terminate a joint tenancy account. In stating that termination could not occur unless the certificate was "cashed in", the *LaGarce* court did not undertake to decide what evidence is sufficient to show that actual termination was accomplished. Arguing that the holding of *LaGarce* should be limited to the facts of that case, Mr. Sanders contends that Louis John Sanders' efforts to have June Bratton's name removed from the certificates of deposit were far more vigorous than the unavailing actions taken by Mr. LaGarce. He suggests that Uncle Louis took all action short of violence that he believed to be necessary to remove June Bratton's name from the accounts.

John Louis Sanders' actions do not, however, rise to the level of those deemed sufficient to terminate joint tenancy in an account in the *McGee* case or its antecedents, principally because Uncle Louis—

like Mr. LaGarce—never presented the certificates of deposit to Home Savings for cancellation.

The question in *McGee* was whether the savings and loan association's actions of making changes on the face of the certificates rather than cancelling them and issuing new certificates in the name of the sole depositor amounted to termination of the account. On February 11, 1974, Walter McGee presented two savings certificates to the association to convert them to a joint tenancy with his nephew, Vernell McGee. Pursuant to that request, the association's officer added Vernell McGee's name and the date to both certificates, and stamped upon each the words "as joint tenants with right of survivorship and not as tenants in common." Also, Vernell McGee's name was added to the account card for each account, and new signature cards for each account were issued and signed by both Walter McGee and his nephew.

Several weeks later, Walter McGee brought the certificates back to the savings and loan, this time to request that both certificates be changed to his name only. In response, the savings and loan officer lined through the nephew's name, the words of joint tenancy, and the effective date of the joint tenancy as those entries appeared on the face of the certificates, the account cards, and the signature cards, adding the date "3/7/74" next to the deletions. Walter McGee died on June 28, 1974. Vernell McGee, executor of Walter's estate, cashed in one certificate and applied the proceeds to the funeral bill. When he was not permitted to cash in the second certificate he brought suit.

In concluding that the procedure used by the savings and loan association effectively terminated the joint accounts, the Supreme Court analyzed the language of § 369.174 [2] and § 360.154(3) [3], the current statutes applicable to joint tenancy accounts deposited with savings and loan associations. The court noted that § 369.174, which provides that funds in a joint account "may be paid to any one of such persons during his lifetime," does not provide any specific procedure or ritual which must be followed to obtain payment. Among the acceptable procedures that clearly would have constituted a "cashing in" of the certificate mentioned in the *LaGarce* case, the court suggested surrendering the certificates to the savings and loan in exchange for cash or a check, or surrendering the old certificates with the request that they be cancelled and that new replacement certificates be issued in Walter McGee's individual name. *McGee*, 599 S.W.2d at 187.

While the procedure used by the savings and loan may have been less desirable than cancelling the old certificates and issuing new ones, the court found that the association's practice of making the change on the face of the existing certificates and account and signature cards was a method it regularly employed and was not impermissible under § 369.154(3). That statute provides that an association may issue any evidence of ownership of an account not prohibited by law or by a regulation of the savings and loan division. *Id.* at 187–88.

That decision is consistent with and supported by three earlier decisions where the acts of the sole contributor joint tenant who held the certificate, together with the actions of the savings and loan association to comply with the requested termination of the existing joint account, were sufficient to terminate the joint account. *See Jackson Savings & Loan Association v.*

---

2. Unless otherwise indicated, all sectional references are to the latest amendments to the Revised Statutes of Missouri (1978).

3. Chapter 369, including § 369.150, R.S.Mo. (1969), the joint account statute for savings and loan associations interpreted in *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo.1972) (en banc),

was repealed by L.1971, p. 351, § A. A new chapter was enacted which includes §§ 369.154 and 369.174. (L.1971 S.B.3.) § 369.174 contains new language that "reinforces the conclusive effect which creation of the account has in establishing the intent of the parties to vest title in the survivor." *Peters v. Carr*, 654 S.W.2d 317, 321 n. 4 (Mo.App.1983).

*Seabaugh,*[4] 395 S.W.2d 260 (Mo.App.1965) (Mr. Seabaugh's joint savings account with his daughter-in-law Lucy was effectively changed to a joint account naming Mr. Seabaugh and his son, Everett, when the association made changes on the certificate and passbook, striking Lucy's name, adding Everett's, and dating the changes); *Carroll v. Hahn,* 498 S.W.2d 602 (Mo.App.1973) (plaintiff's stepfather effectively terminated a joint account naming himself and the plaintiff by surrendering the certificate and receiving in lieu thereof a certificate representing a joint account of the stepfather and a niece); and *In re Estate of Hampton,* 547 S.W.2d 886 (Mo.App.1977) (by surrendering two certificates naming his wife as joint tenant and receiving a single certificate issued in his name alone, Mr. Hampton effectively terminated the joint account with his wife).

Unlike Walter McGee, Uncle Louis never presented the certificates to Home Savings for cancellation, bringing the facts of the instant case within the rule of *LaGarce.*

■ The Supreme Court's holding in *LaGarce* is two-fold. First, compliance with § 362.470,[5] R.S.Mo. (1969), governing joint accounts on deposit with banks and trust companies, or § 369.150[6] relating to joint accounts deposited with savings and loan associations, conclusively creates a valid joint tenancy with right of survivorship which should be given effect without consideration of the strict common law requirements necessary to create a valid gift inter-vivos.[7]

■ Second, the Court decided that mere intent to terminate a joint tenancy account is not enough to effectuate termination. *Id.* at 501. Accordingly, we review the unavailing actions taken by Mr. LaGarce in his attempt to terminate a joint tenancy account, comparing them with the steps taken by Louis John Sanders in the present case.

On August 21, 1969, August LaGarce converted a savings certificate on deposit with a savings and loan association from his personal account to a new account naming himself, James Mouldon and Leona Mouldon joint tenants with right of survivorship. He handed the revised certificate to the Mouldons with the understanding that they were not to cash it during his lifetime, and were to return it to him upon his request.

Subsequently, Mr. LaGarce and his wife, who had been separated, reconciled. On October 3, 1969, Mr. LaGarce telephoned Mrs. Mouldon to request that she return the certificate so he could change the account to a joint tenancy of himself and his wife. The Mouldons did not turn over the certificate, but instead decided to make the certificate available to LaGarce by placing it in the possession of their attorney on

---

**4.** The *McGee* court noted that "[t]he fact that *Seabaugh* preceded *LaGarce* is of no consequence. As noted previously, *LaGarce* did not undertake to define what actions by the joint tenant and association constituted termination or 'cashing in.' Rather, the court in *LaGarce* referred to termination only insofar as necessary to distinguish an intended act, or perhaps more precisely, a *contemplated* act, from a completed act. Thus, the holding in *Seabaugh* was not disturbed by *LaGarce.*" (Original emphasis.) 559 S.W.2d at 188.

**5.** § 362.470 has been amended by L.1977, p. 554, § 1. The change reflects the conclusive effect announced in the *LaGarce* case.

**6.** See note 2, *supra,* for the subsequent history of § 369.150, R.S.Mo. (1969).

**7.** Before *LaGarce,* joint tenancies created by a sole contributing depositor who wished the funds to remain within his control during his lifetime and then to go to the surviving joint tenant upon his death, often failed because the transfer lacked the necessary common law elements to constitute a valid inter-vivos gift, and because such transfers are testamentary in nature and thus violate the statute of wills. Under the "gift theory", compliance with the statutory form merely created a rebuttable presumption that the deposit became the property of such persons as joint tenants, which could be overcome by competent parol or other evidence showing a different intent. The *LaGarce* court overruled cases which adopted that view, including *Jenkins v. Meyer,* 380 S.W.2d 315 (Mo. 1964), and *Wantuck v. United Savings & Loan Association,* 461 S.W.2d 692 (Mo.1971) (en banc). *See* 487 S.W.2d at 499–500.

October 7, 1969, to be picked up personally by LaGarce when and if he so desired.

The next day, an employee of the savings and loan association telephoned Mrs. Mouldon to advise her that Mr. LaGarce was not able to obtain the certificate from the attorney's office due to a serious illness which could result in his death. The employee explained that LaGarce could not terminate the joint tenancy account without presenting the certificate, and requested that Mrs. Mouldon return the certificate to Mr. La-Garce immediately.

On October 9, 1969, the Mouldon's attorney received a telegram from another lawyer, presumably on Mr. LaGarce's behalf, demanding immediate delivery of the certificate. Meanwhile, the Mouldons' attorney had prepared a letter requesting that Mr. LaGarce arrange to come to the office on October 10 to take possession of the certificate. August LaGarce's death on October 9, 1969, rendered ineffective those final efforts to recover the certificate.

■ In the present case, during his lifetime Louis John Sanders had every right to withdraw the funds represented by the two certificates of deposit. According to *Carroll v. Hahn, supra,* 498 S.W.2d at 607, the depositor who alone furnished the funds for a joint tenancy account may terminate the interest of the non-contributing owner without responsibility.[8] Even so, the actions taken by Uncle Louis were not sufficient to terminate the joint tenancy accounts.

■ The trial court correctly determined that the *LaGarce* case states the controlling law in light of the fact that Uncle Louis did not have possession of the two savings certificates and, therefore, never surrendered them to Home Savings. The analysis offered in the *McGee* case as to what particular procedures of a savings and loan association effectively terminate joint tenancy is not applicable unless the certificate, passbook, or other such document has been presented to the financial institution. We note that June Bratton testified that Uncle Louis never asked her to return the certificates to him. Furthermore, Uncle Louis' attempt to place stop orders on the accounts failed simply because he had not timely conferred a power of attorney upon Robert Sanders to act on his behalf.

II.

Mr. Sanders argues that if we affirm the judgment of the trial court we leave those in Uncle Louis' situation to a remedy of self-help and whatever violence that may entail in their efforts to take possession of the certificates to present them for cancellation.

The statute governing joint deposits in banks and trust companies, § 362.470.1,[9] and the statute governing joint tenancy

---

**8.** *Cf. Blue Valley Federal Savings & Loan v. Burrus,* 637 S.W.2d 737, 745 (Mo.App.1982) (Where the funds in the account were jointly contributed, as in *Feltz v. Pavlik,* 257 S.W.2d 214 (Mo.App.1953) "there is a proper subject for tracing the joint funds and imposing a constructive trust.").

**9.** § 362.470.1 provides in pertinent part:
By written instructions of all joint tenants given to the bank or trust company they may require the signatures of more than one of such persons during their lifetimes or of more than one of the survivors after the death of any one of them on any order for payment, withdrawal, check endorsement or receipt, in which case the bank shall honor orders to pay or withdrawals and make payments of interest only in accordance with such instructions, but no such instructions shall limit the right of the sole survivor or of all of the survivors to all or any part of any such deposit or interest thereon. The payment and the receipt or acquittance of the one to whom the payment is made as provided in this section shall be a valid and sufficient release and discharge to the bank or trust company, whether any one or more of the persons named is dead or alive, for all payments made on account of such deposit prior to the receipt by the bank or trust company of notice in writing signed by any one of the joint tenants not to pay the deposit in accordance with the terms thereof. After receipt of such notice a bank or trust company may refuse without liability to honor any check or other order to pay, withdrawal, receipt, or to pay out any interest thereon pending determination of the rights of the parties....

accounts on deposit with savings and loan associations, § 369.174.1, as amended,[10] provide two options under such circumstances. First, upon written instructions of all joint tenants, the joint tenants may require the signature of more than one of such persons during their lifetimes or of more than one of the survivors after the death of any one of them on any notice of withdrawal. Second, the financial institution may refuse without liability to honor any order to pay upon notice signed in writing by any one of the joint tenants, pending determination of the rights of the parties. These provisions, however, are not mandatory.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.

---

10. § 369.174.1, in effect at all times relevant to this action, contained language similar to that found in § 362.470.1 except that it was tailored to apply to savings and loan associations rather than to banks and trust companies.

§ 369.174.1 has been amended pursuant to A.L. 1983 S.B. 44 & 45 and H.B. 570. The new language as it appears in R.S.Mo. (Supp.1984) provides, in pertinent part:

A person may be added or removed as an owner of an account upon the written direction of any owner of the account upon whose signature withdrawals may be made from the account. By written instructions of all joint tenants given to the association, they may require the signatures of more than one of such persons during their lifetimes or of more than one of the survivors after the death of any one of them on any notice of withdrawal, request for withdrawal, check endorsement or receipt, or remove any such requirement, in which case the association shall pay withdrawals and earnings only in accordance with such instructions, but no such instructions shall limit the right of the sole survivor or of all of the survivors to receive withdrawal payments and earnings. Payment of all or any of the moneys in the account or payment of earnings thereon as provided in this section is a valid and sufficient release and discharge of the association with respect to the moneys so paid prior to receipt by the association of a written notice from any one of the account owners directing the association not to permit withdrawals or make payments in accordance with the terms of the account or the written instructions. After receipt of such notice an association may refuse without liability to honor any check, receipt or withdrawal order or pay any earnings on the account pending determination of the rights of the parties, *but is not required to do so.* (Emphasis supplied.)