**SENTINEL FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Delores M. & Gary JONES, Defendants–Appellants,**

**and**

**Estate of John K. Martin, Defendant– Respondent,**

**and**

**Greta Paoni–Hauer and John K. Martin, Jr., Defendants.**

**No. WD 44053.**

Missouri Court of Appeals, Western District.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

W. Raleigh Gough, Raytown, for defendants-appellants.

Frederick W. Bryant, Kansas City, for defendant-respondent.

Before LOWENSTEIN, C.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

In an interpleader action filed by Sentinel Federal Savings and Loan Association, the trial court awarded two certificates of deposit and the funds in a passbook account to the estate of John K. Martin. Delores M. Jones and Gary A. Jones appeal the trial court's determination claiming that as surviving joint tenants they are the owners of the certificates and account.

We must affirm the trial court's judgment if it is supported by substantial evidence, not against the weight of the evidence and the court correctly declared and applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Because the trial court erroneously declared and applied the law in this case, we reverse the judgment.

On July 15, 1971, Martin opened a passbook savings account, numbered 47701, at

Sentinel Federal Savings and Loan Association in the names of Nellie P. Martin,[1] John K. Martin, Delores M. Jones,[2] and Gary A. Jones[3] as "joint tenants with right of survivorship and not as tenants in common or by the entirety." On November 2, 1979, Sentinel issued a certificate of deposit, numbered 8–380864–1, to Nellie P. Martin, John K. Martin, Delores M. Jones and Gary A. Jones as "joint tenants with right of survivorship and not as tenants in common or by the entirety." On January 2, 1986, Sentinel issued a second certificate of deposit, numbered 8382833–4, to John K. Martin and Delores M. Jones as co-trustees with right of survivorship for Greta L. Paoni[4] and John K. Martin, Jr.,[5] and on January 19, 1988, Sentinel added Gary A. Jones as co-trustee on this certificate at Martin's request.

Martin provided all the funds for these accounts. The purpose of his placing other person's names on the accounts was to avoid probate and not to pass the funds to any of those individuals during his lifetime. Martin had one of the certificates, but Delores Jones kept the other certificate and the passbook account book.

On December 14, 1988, Martin feared that Delores Jones intended to withdraw all of the funds, so, pursuant to § 369.174, RSMo 1986, he requested that Sentinel freeze the funds pending determination of the parties' rights to the funds. In a letter dated December 19, 1988, Martin's attorney asked Sentinel to institute an interpleader action so that a court could determine ownership of the accounts. Sentinel complied by filing a petition for interpleader in the circuit court of Jackson County on January 19, 1989, and filing an amended petition on October 23, 1989.

On December 22, 1989, the court ordered Sentinel to pay the passbook funds to the court administrator of the circuit court of Jackson County and required that the certificates of deposit be reissued in the name of the court administrator. On December 29, 1989, Sentinel delivered a check to the court made payable to the court administrator in the amount of $681.45, representing the proceeds and interest from the passbook account, and reissued the certificates of deposit in the name of the court administrator. Each certificate reflected a balance of $25,601.26.

Martin died two days later on December 24, 1989. The court allowed Loren G. Vest, personal representative of Martin's estate, to be substituted as the defendant in the interpleader suit.

After a trial on February 7, 1990, the trial court acknowledged in its final order of October 3, 1990, that valid joint tenancies existed as to all three accounts and if those tenancies were not terminated prior to Martin's death the funds belonged to the other joint tenants. The court concluded that because Martin did not have one of the certificates and the passbook account in his possession, "[a]ll he could do then was ask to have the accounts frozen. Under *Home Savings Association v. Bratton*, 721 S.W.2d 40 (Mo.App.1986), that action was sufficient to sever the joint tenancy." The trial court concluded that the funds belonged to the estate. We disagree.

Pursuant to §§ 369.154 and 369.174, RSMo 1986, statutory joint tenancies may be created in certificates of deposit or joint accounts. Such statutory joint tenancies are to be given effect without applying common law concepts to determine whether valid joint tenancies have been created. *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972).[6] The parties agree that valid

---

1. Nellie Martin was Martin's wife; she died in 1985.

2. Delores Jones is the daughter of Nellie Martin and the step-daughter of Martin.

3. Gary Jones is Delores Jones' son.

4. Greta L. Paoni is the daughter of Nellie Martin and the step-daughter of Martin.

5. John K. Martin, Jr., is the son of Martin by his first marriage.

6. The *LaGarce* court found that a joint account with right of survivorship had been created pursuant to § 369.150, RSMo 1969. Chapter 369, including § 369.150, was repealed in 1971 and a new chapter was enacted. Sections 369.154 and 369.174 are the pertinent sections concerning joint accounts.

joint tenancies were created in the certificates of deposit and the passbook account. Hence, the single issue to be resolved is whether the joint tenancies were terminated prior to Martin's death.

■ The trial court focused on the so-called "freeze order" as the operative moment when the joint tenancies were terminated. Section 369.174.1, RSMo 1986, provides:

> Payment of all or any of the moneys in the account or payment of earnings thereon as provided in this section is a valid and sufficient release and discharge of the association with respect to the moneys so paid prior to receipt by the association of a written notice from any one of the account owners directing the association not to permit withdrawals or make payments in accordance with the terms of the account or the written instructions. After receipt of such notice an association may refuse without liability to honor any check, receipt or withdrawal order or pay any earnings on the account pending determination of the rights of the parties, but is not required to do so.

This statute allows a savings and loan association to refuse to honor any withdrawal order on an account while an action to determine ownership rights is pending. Such an act is within the discretion of the savings and loan association and is not mandatory.

Contrary to the trial court's reading of *Bratton*, this court did not hold that a freeze order was equal to a request to terminate a joint tenancy. The *Bratton* court merely acknowledged that § 369.-174.1 provided an option to a joint tenant to help gain possession of a certificate that may be in another's possession. Section 369.174.1 suggests that the joint tenancy remains in existence "pending determination of the rights of the parties."

■ Because Martin's freeze order merely suspended any action on the accounts by the joint tenants, Sentinel took the next appropriate step in determining ownership rights: It filed an interpleader action. That action did not abrogate anybody's title in the certificates or accounts. *Harrison v. Harrison*, 417 S.W.2d 39, 44 (Mo.App. 1967). It merely allowed a court to determine who had a right to the funds held by Sentinel. Pendency of an interpleader action, without a judgment, does not terminate a joint tenancy.

Because the joint tenancies in the certificates and account were not terminated prior to Martin's death by the freeze order or the pending interpleader action, we must determine whether the parties' actions terminated the joint tenancies. In *LaGarce*, the Supreme Court ruled that an owner's mere intent to terminate a joint tenancy was insufficient; "actual termination" must be accomplished. *LaGarce*, 487 S.W.2d at 501. The Supreme Court gave some examples of what constituted actual termination in *McGee v. St. Francois County Savings and Loan Association*, 559 S.W.2d 184, 187 (Mo. banc 1977):

> [The owner] could have surrendered the certificates to S & L and received cash or a check therefor. He also could have surrendered the old certificates and asked that they be cancelled and new replacement certificates issued in his individual name or in his name and the name of some other person or persons as joint tenants.

The *McGee* court further explained that it deemed termination to be "a completed act" as opposed to "a *contemplated* act." *Id.* at 188 (emphasis in original).

As Martin's estate acknowledges in this appeal, Martin only began a process; he did not complete it by reaching actual termination before his death. Actual termination did not occur until October 3, 1990, about 10 months after Martin died, when the trial court issued its final determination.

■ The Joneses also contend that Gary Jones' failure to file an answer to the interpleader petition does not prejudice his right to question the judgment on appeal. We agree. Even though Gary filed no answer, the trial proceeded as if he had and without objection by the other parties. Although the rule requiring an answer is

mandatory, it is waived unless the opposing party timely invokes its enforcement. *Estate of Schubert v. Holleman*, 683 S.W.2d 324, 325–26 (Mo.App.1984); Rule 55.01. Therefore, Gary is entitled to question the judgment on appeal.

The joint tenancies in the certificates of deposit and passbook account were not terminated prior to Martin's death. We therefore reverse the judgment and remand with directions that judgment be entered declaring the surviving joint tenants as owners of the certificates and passbook account.

All concur.